IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK ACCOUNT **"CLEMJUNIORJR"** THAT IS STORED AT PREMISES CONTROLLED BY META PLATFORMS, INC. | Case No. 1:24-mj-<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Erik T. Rae, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook account that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc. ("Meta"), a company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Meta to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the account.

2. I am a Task Force Officer with the Federal Bureau of Investigation (FBI) Southern Maine Gang Task Force and have been so employed since June 2022. I am additionally a law enforcement officer with the Sanford Police Department and have been so employed since July 2017. After graduating from the Maine Criminal Justice Academy, I was assigned to Uniformed Patrol in Sanford from 2017 until 2022. In June 2022, I was assigned to the Criminal Investigation Division of the Sanford Police Department as a Detective.

3. In the course of my law enforcement training and experience, I have conducted and participated in numerous investigations, including homicides, sexual assaults, commercial burglaries, digital/internet-based offenses, and narcotics crimes. During investigations, I have applied for and executed several search warrants, specifically including search warrants for internet-based and cellular data. Throughout the course of my career, I have been actively involved in several search warrants that resulted in recovery of physical and electronic evidence.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other officers and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 2261A (Stalking and Harassment) have been committed by DAVID PARKS. There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

**PROBABLE CAUSE**

6. In July 2023, the Kittery, Maine Police Department was forwarded a case originating with the Portsmouth, New Hampshire Police Department. The Portsmouth Police Department was investigating a report by ▮▮▮▮ and ▮▮▮▮ (her boyfriend) in which ▮▮▮▮ complained that DAVID PARKS was posting explicit photographs of ▮▮▮▮ on social media websites.

7. ▮▮▮▮ was interviewed by the Kittery Police Department. ▮▮▮▮ provided the following information:

a. ███████ is a previous resident of Portsmouth and the protected party in a New Hampshire protective order, which names DAVID PARKS as the defendant. This order was issued by the New Hampshire Circuit Court, 10th Circuit – Family Division, Portsmouth, NH, in March 2021.

b. Before obtaining the protective order, ███████ was in a short-lived romantic relationship with PARKS. After the relationship terminated (as she found he was older than he claimed, and was married with a child), she began receiving reports that sexual images depicting her had been sent to multiple friends' social media accounts.

c. ███████ previously maintained an account through OnlyFans, on which paid subscribers could obtain sexualized content she created. The account had been deleted in 2021, but the content shared to her friends' social media accounts was previously posted to her (now deleted) OnlyFans account.[1]

8. ███████ ultimately provided a written statement to the Kittery Police Department. After review of the provided statement, I observed the following:

a. ███████ obtained a protection order against PARKS in March 2021 and is active until March 24, 2024. In court proceedings, ███████ presented that she was being harassed and stalked by PARKS. Specifically, she reported that

---

[1] During my interview of ███████████, she disclosed that her relationship with PARKS spanned a few dates and occurred while her OnlyFans account was active. During this relationship, sexual acts between ███████ and PARKS were recorded, and were shared (at PARKS' request) via OnlyFans. All of the content shared by the "ClemJuniorJR" account depicted ███████ alone.

3

someone was sharing her OnlyFans content through Facebook and Instagram accounts suspected to be maintained by PARKS.

b. ▇▇▇▇▇ noticed that her content was posted to several pornographic websites under accounts including the username "clem jr."

c. ▇▇▇▇▇ knows e-mails referencing her content were sent to the Portsmouth City Council (as she is a friend of a current councilman), and East Coast Cannabis (a marijuana dispensary in Eliot, ME where she was previously employed). In days after leaving her position at East Coast Cannabis (in July 2023), ▇▇▇▇▇ was informed that messages including "monica clough nude" had been received through a form-filled message service on the business's website.

9. During this investigation, ▇▇▇▇▇ provided records from three New Hampshire Circuit Court hearings conducted in regard to her protective order against DAVID PARKS. After review, I identified the following information:

a. On March 11, 2021, the final hearing for the Domestic Violence Order of Protection against DAVID PARKS was held. In the court proceeding, ▇▇▇▇▇ claimed that PARKS digitally stalked her, which the court found as credible. ▇▇▇▇▇ additionally complained that messages were sent (by an account suspected to be maintained by PARKS) to her parents, which describe (in graphic detail) the nature of her OnlyFans content.

b. The New Hampshire Circuit Court held (by a preponderance of the evidence) that PARKS engaged in harassing and stalking behavior, and the court issued the protective order.

    c. On August 24, 2022, the New Hampshire Circuit Court held a hearing to extend the protective order. During the hearing, ▆▆▆▆▆ complained that derogatory statements and content were posted to websites, acts suspected to have been committed by PARKS. The court found ▆▆▆▆▆'s claims to be credible, and the order was extended an additional year.

    d. On September 6, 2023, a Domestic Violence Contempt hearing was held in the New Hampshire Circuit Court. During this hearing, ▆▆▆▆▆ complained that PARKS continued to send harassing messages to ▆▆▆▆▆'s friends and employers (including East Coast Cannabis).

    e. During this proceeding, PARKS denied sending the majority of messages ▆▆▆▆▆ claimed were sent by him but acknowledged sending messages to the Portsmouth City Council. As digital investigations had not yet proven PARKS sent the messages, the court did not find a violation of the protective order.

10.   ▆▆▆▆▆ has provided numerous instances in which a person using the name "Clem Junior" comments on or complains about ▆▆▆▆▆'s previous sexual content. Of the numerous provided examples, I noted the following:

    a. On July 13, 2023, the Portsmouth city council (through a form-filled web service in which users can input their own name and e-mail address) received a message from "Clem Junior" with e-mail clemjunior@aol.com, which complained that Andrew Bagley (a former city councilor and friend to ▆▆▆▆▆) accompanied a "sex worker" in court.

    b. On September 5, 2023, a friend of ▆▆▆▆▆ informed her that a Facebook account named "Clem Junior" sent several messages, including the message

"google ▮▮▮▮ nude. Admitted in court to giving oral sex to men for money and getting urinated on for money by her bf breeze."

c. On the same day, another friend of ▮▮▮▮ informed her that the same user sent similar messages, including "▮▮▮▮ has admitted in court to giving oral sex to men for money for onlyfans while working at works bagel café and getting peed on in her mouth for money"

d. On September 25, 2023, the same Facebook user sent another friend of ▮▮▮▮ similar messages, including "you have a very good friend that admitted in Portsmouth NH District Court to soliciting men for money and giving them oral sex using various social media and who also admitted to letting her BF bree actually urinate in her mouth as part of a quote "performance" on onlyfans."

e. On October 4, 2023, Summer Sessions Surf Shop (▮▮▮▮'s then-employer, located in Portsmouth, NH) received a message through a form-filled message service on its website. The message (sent by "Clem Junior" with an e-mail address of clemjunior@aol.com) read "you might have some recent super heavily tattooed employees that do online adult work and have admitted in court to being "sex workers" might want to screen employees better."

f. In November 2023, ▮▮▮▮ was informed that "Clem Junior" had posted in reply to a post made by BAGLEY on a Portsmouth community Facebook page, including: "Andrew bagley is a short fat ugly lying bag of excrement who supports women who admitted in court to getting urinated on and giving oral sex to men for money in court. Ask him. I can provide the documents."

6

11. While attempting to identify the Facebook account name for "Clem Junior," I noticed the account is activated when used, then de-activated.

12. As I was provided numerous examples of comments and messages made by Facebook user "Clem Junior," and specifically identified the comments as likely made (by content and context) by DAVID PARKS (intentionally harassing behavior in violation of an active NH protective order), I submitted a preservation request for account "ClemJuniorJR," on September 24, 2023, which was assigned Facebook preservation number **8121674**, requesting Facebook records from September 24, 2021 through September 24, 2023 be preserved.

## BACKGROUND CONCERNING FACEBOOK[2]

13. Meta owns and operates Facebook, a free-access social networking website that can be accessed at http://www.facebook.com. Facebook users can use their accounts to share communications, news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

14. Meta asks Facebook users to provide basic contact and personal identifying information either during the registration process or thereafter. This information may include the user's full name, birth date, gender, e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Each Facebook user is assigned a user identification number and can choose a username.

---

[2] The information in this section is based on information published by Meta on its Facebook website, including, but not limited to, the following webpages: "Privacy Policy," available at https://www.facebook.com/privacy/policy; "Terms of Service," available at https://www.facebook.com/legal/terms; "Help Center," available at https://www.facebook.com/help; and "Information for Law Enforcement Authorities," available at https://www.facebook.com/safety/groups/law/guidelines/.

15. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

16. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

17. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user

and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

18. Facebook users can upload photos and videos to be posted on their Wall, included in chats, or for other purposes. Users can "tag" other users in a photo or video, and can be tagged by others. When a user is tagged in a photo or video, he or she generally receives a notification of the tag and a link to see the photo or video.

19. Facebook users can use Facebook Messenger to communicate with other users via text, voice, video. Meta retains instant messages and certain other shared Messenger content unless deleted by the user, and also retains transactional records related to voice and video chats. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

20. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

21. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

22. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

23. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through

the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

24. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

25. In addition to the applications described above, Meta provides users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

26. Meta also retains records of which IP addresses were used by an account to log into or out of Facebook, as well as IP address used to take certain actions on the platform. For example, when a user uploads a photo, the user's IP address is retained by Meta along with a timestamp.

27. Meta retains location information associated with Facebook users under some circumstances, such as if a user enables "Location History," "checks-in" to an event, or tags a post with a location.

28. Social networking providers like Meta typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between

the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

29.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Meta, can indicate who has used or controlled the Facebook account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time.  Further, Facebook account activity can show how and when the account was accessed or used.  For example, as described herein, Meta logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation.  Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation.  Additionally, location information retained by Meta may tend to either inculpate or exculpate the Facebook account owner.  Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation.  For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a

plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

30. Therefore, the servers of Meta are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

31. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Meta to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

32. Based on the foregoing, I request that the Court issue the proposed search warrant.

33. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Meta. Because the warrant will be served on Meta, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

34. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) &

(c)(1)(A).  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated.

Respectfully submitted,

/s/ Erik T. Rae
Erik T. Rae
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me on _____ February 12 _____, 2024

*Andrea K. Johnstone*
Andrea K. Johnstone
United States Magistrate Judge
UNITED STATES MAGISTRATE JUDGE

13

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to information associated with Facebook account "CLEMJUNIORJR" that is stored at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

I.     **Information to be disclosed by Meta Platforms, Inc. ("Meta")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta, regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Meta, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Meta is required to disclose the following information to the government for each user ID listed in Attachment A:

(a) All contact and personal identifying information, including (**for user ID: "CLEMJUNIORJR"**) full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b) All activity logs for the account and all other documents showing the user's posts and other Facebook activities **September 1, 2021 to December 31, 2023**;

(c) All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them **from September 1, 2021 to December 31, 2023**, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d) All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification

numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, advertising ID, and user agent string;

(f) All other records and contents of communications and messages made or received by the user from **September 1, 2021 to December 31, 2023**, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g) All "check ins" and other location information;

(h) All IP logs, including all records of the IP addresses that logged into the account;

(i) All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j) All information about the Facebook pages that the account is or was a "fan" of;

(k) All past and present lists of friends created by the account;

(l) All records of Facebook searches performed by the account from **September 1, 2021 to December 31, 2023**;

(m) All information about the user's access and use of Facebook Marketplace;

(n) The types of service utilized by the user;

2

(o)  The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)  All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)  Records of any Facebook accounts that are linked to the account by machine cookies (meaning all Facebook user IDs that logged into Facebook by the same machine as the account); and

(r)  All records pertaining to communications between Meta and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Meta is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

II. **Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. § 2261A (Stalking and Harassment) involving DAVID L. PARKS since September 1, 2021, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) Communications between DAVID PARKS and other persons with intent to harass or stalk ▇▇▇▇▇▇▇▇▇▇, and identifying information confirming the account is operated by DAVID PARKS;

(b) Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(c) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed

5

electronic data to the custody and control of attorneys for the government and their support staff for their independent review.